HOOPER, Chief Justice.
Harold Blankenship is a high-school band director, and Louie Fryer is a high-school principal. They are defendants in an action filed by C.S., a minor, through her mother. C.S. is a student at the school where the defendants Blankenship and Fryer work. The action seeks damages on the theory that Blankenship and Fryer should have prevented C.S. from leaving the school campus with a 19-year-old man who subsequently engaged in sexual intercourse with her. Blankenship and Fryer moved for a summary judgment on *1187 the ground that supervision of a student falls within the doctrine of discretionary immunity. The trial court denied the motion for summary judgment. Blankenship and Fryer now seek a writ of mandamus from this Court directing the Elmore Circuit Court to grant their motion for summary judgment — they contend that they are entitled to a judgment based on the doctrine of discretionary immunity. The standard governing our review of an issue presented in a petition for a writ of mandamus is well established:
“[Mjandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. Barber v. Covington County Comm’n, 466 So.2d 945 (Ala.1985). In cases involving the exercise of discretion by an inferior court, mandamus may issue to compel the exercise of that discretion. It may not, however, issue to control or review the exercise of discretion except in a case of abuse. Ex parte Smith, 533 So.2d 533 (Ala.1988).”
Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989). We grant the petition and issue a writ directing the trial court to enter a summary judgment for Blankenship and Fryer.
This case arises from the statutory rape of C.S., a minor, by Jason Howard, age 19. Howard and C.S. were boyfriend and girlfriend and were members of the same marching band at a public high school in Elmore County. Neither was a student at that high school. Harold Blankenship, director of the marching band, knew that Howard was not a student at the school but allowed him to participate in the band because he believed Howard was a student at Oakdale High School, a private school in Montgomery that does not have a marching band. The evidence indicates that Howard actually had been a student at the Elmore County high school but had dropped out the previous February and that at the time of the statutory rape he was not attending a private school or any other school but was working full time. C.S., age 13, was an eighth-grade student at a junior high school.
When C.S.’s parents learned of the romance, they asked Blankenship to keep the two apart. They were assured that the band members would be adequately supervised. However, after Blankenship gave this assurance to C.S.’s parents, the band participated in a trip to Troy to perform at a football game. The band stayed overnight at a hotel in Troy and returned to the Elmore County high school the following day. On the day of their return, Saturday, November 9, 1996, C.S. was supposed to spend the night with a girlfriend, C.W., who was also a participant with the band, rather than going home. C.S.’s parents had given C.S. permission to go home with her friend. When the band arrived at the school, the girls attempted to telephone C.W.’s parents, but they received no answer. They then attempted to contact C.S.’s parents, but could not. The girls then left with Howard and his brother, who had come to the high school to pick up Howard. When they left, another male, not identified in the record before us, was with the group. Howard, C.S., and C.W. left Howard’s brother and the other male in Montgomery.
Howard, C.S., and C.W. then returned to Elmore County. They stopped at a convenience store in Elmore County. At *1188 some point during the evening, Howard gave C.S. an engagement ring. Apparently, the couple had agreed nine days earlier to marry. The group went from the convenience store to another bandmember’s house for a party. C.S. and Howard left C.W. at the party, and they drove to a secluded place and engaged in sexual intercourse.[2] Howard and C.S. returned to the party, where they roasted marshmallows and hot dogs and visited with their friends. Later, the girls found out that their parents were looking for them, and C., another girl at the party, drove them to C.W.’s house. C.W.’s father drove them to a police station because C.S.’s parents had reported that Howard had taken C.S. without their permission. The girls denied the events of the evening, claiming they had spent the time with C. On Monday, C.S. told her father what had really happened, and on Tuesday C.S. and her parents reported the incident to the police.
C.S.’s parents acknowledge that it was the responsibility of students and their parents to make arrangements for students to get home after the trip. C.S.’s parents also acknowledge that they could have gone on the trip to Troy as chaperons. The complaint filed against Blankenship and Fryer states several claims alleging that Blankenship and Fryer failed to properly supervise both C.S. and Howard by allowing C.S. to leave the school grounds with Howard.
Blankenship and Fryer moved to dismiss the plaintiffs claims against them, under a theory that their actions on November 9, 1996, were covered under the doctrine of discretionary immunity. C.S. countered this motion by arguing that the supervision of C.S. and Howard was ministerial. Specifically, she argued that Blankenship had no authority to allow Howard to participate in the band, because the Elmore County School Board had issued guidelines concerning participation in extracurricular activities. Those guidelines stated that a child could not participate in an extracurricular activity on a particular day if the child had not attended school for that entire day. C.S. argues that Howard was not a student, and, thus, did not meet the school board’s requirement for participating in the band program. C.S. claims that this fact removes any discretion Blankenship may have had in allowing Howard to participate in the program. Even if he was a student at Oakdale, he still did not attend an Elmore County school during the day. The trial court denied Blankenship and Fryer’s motion for summary judgment.
Blankenship and Fryer ask this court to issue a writ of mandamus directing the trial court to enter a summary judgment in their favor, on the ground that their actions were protected by the doctrine of discretionary immunity. In a recent case, Ex parte Cranman, 792 So.2d 392 (Ala.2000), Justice Lyons restated the rule governing “State-agent immunity”:
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or *1189 agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
792 So.2d at 405. This restatement was adopted by our decisions in Ex parte Rizk, 791 So.2d 911 (Ala.2000), and Ex parte Butts, 775 So.2d 173 (Ala.2000).
We review Blankenship and Fryer’s claim of immunity by the standards set forth in Cranman. Blankenship and Fryer are protected under the doctrine of discretionary immunity because their actions occurred while they were discharging their duties in educating students. The decisions made by Blankenship and Fryer on November 9, 1996, were made while they were acting in their official capacities.
C.S. argues that Blankenship and Fryer were performing a ministerial function because the Elmore County School Board had issued a policy concerning participation in extracurricular activities. Along with stating other requirements, the policy states: “It is the policy of the Elmore County Board of Education that a student must be present at school the entire day in order to participate in extracurricular activities that day, except for verifiable medical or legal appointments or prior approval from the school administration.” C.S. argues that this policy leaves no room for deviation by either Blankenship or Fryer and that they were operating beyond their authority when they allowed Howard to participate in band activities.
We disagree. This “evidence” does not tell us that the band director and the principal were without the authority to decide to offer this program to students not registered at their high school. It is apparent that participation in the marching band is not limited to students at the high school where the defendants work. C.S. herself was not a student of that high school when the incident occurred. She attended a junior high school in Elmore County and was subject to the policies of *1190 the Elmore County School Board. However, the policy C.S. relies on does not limit the discretion of a principal and a band director in allowing students who do not attend their high school or nonstudents to participate in extracurricular activities of that school. Nor is it clear that the policy adopted by the school board prohibits nonstudents or out-of-county students from participating in the band.
One with 20/20 hindsight might question the wisdom of Blankenship and Fryer’s decision to allow a person they thought was a student from a private school outside Elmore County to participate in the band activities and the wisdom of their failing to verify that he was a student at the private school he claimed to attend. State-agent immunity protects agents of the State in their exercise of discretion in educating students. We will not second-guess their decisions. The trial court abused its discretion in refusing to enter a summary judgment in favor of Blankenship and Fryer on the grounds of discretionary immunity.
The trial court is directed to enter a summary judgment in favor of Blankenship and Fryer.
PETITION GRANTED; WRIT ISSUED.
MADDOX, HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.
COOK, J., dissents.

. Howard subsequently pleaded guilty to consensual statutory rape and served two years of supervised probation.